UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JONATHAN B. WILE,

                               **Plaintiff,**

v.

                                                  17-CV-1275S(Sr)

JAMES RIVER INSURANCE COMPANY,

                               **Defendant.**

---

## DECISION AND ORDER

This case was referred to the undersigned by the Hon. William M. Skretny, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters. Dkt. #6.

Plaintiff commenced this action seeking Supplementary Uninsured/Underinsured Motorist ("SUM"), coverage pursuant to an insurance contract with the defendant following a motor vehicle accident on June 22, 2014 by summons and complaint filed in New York State Supreme Court, County of Erie. Dkt. #1. The matter was removed to this Court pursuant to 28 U.S.C. § 1332(a), based upon complete diversity of citizenship. Dkt. #1.

Currently before the Court is plaintiff's motion to compel defendant to produce plaintiff's SUM file, produce its expert witnesses for deposition and revise its responses to plaintiff's Second Notice to Produce; to award plaintiff attorney's fees for

its dilatory conduct in responding to discovery demands; and to extend the Case Management Order to allow plaintiff to complete discovery. Dkt. #35.

**Notice to Produce**

Plaintiff's Second Notice to Produce was served on December 14, 2018. Dkt. #35-7. As relevant to the instant dispute, the Second Notice to Produce seeks a complete copy of the plaintiff's SUM claim file, including all log entries, attachments, and diary reports from February 1, 2018 to present. Dkt. #35-7, ¶ 1. By letter dated March 20, 2019, plaintiff's counsel requested a response to the Second Notice to Produce. Dkt. #35-9. By email dated April 12, 2019, plaintiff's counsel advised that he was still waiting for a response to the Second Notice to Produce. Dkt. #35-11.

On April 17, 2019, defendant responded to the Second Notice to Produce as follows:

> Defendant objects to this Request for Production to the extent they are overly broad, unduly burdensome and would cause unreasonable annoyance, embarrassment, oppression, burden or expense to the defendant, and would require the making of unreasonable investigation by the defendant. Subject to, and without waiving said objections, there is no such SUM file as after the filing of the subject complaint and action no additional materials, documents, or information became part of the SUM file due to this pending litigation.

Dkt. #35-13, ¶ 1.

By letter dated May 15, 2019, plaintiff objected to defendant's response, noting that defendant's general objections violates the specificity requirement of

Federal Rule of Civil Procedure 34(b)(2)(B) and Rule 34(b)(2)(C)'s requirement to indicate whether materials are being withheld on the basis of an objection. Dkt. #35-14.

In support of their motion to compel, plaintiff argues that defendant has improperly withheld a portion of the SUM file on privilege grounds even though no such privilege protects claims files. Dkt. #35-16, p.5.

Defendant responds that there are no additional SUM file materials from February 1, 2018 through the present and that it had previously produced the entirety of the SUM file, subject to redaction and a privilege log, on August 24, 2018. Dkt. #40, ¶ 3. Defendant responds that it has supplemented its response to clarify that none of the materials plaintiff requests actually exists and that defendant is not withholding any documents. Dkt. #40, ¶ 5. Defendant attached to its motion papers a Supplemental Response to Plaintiff's Second Request for Production stating: "There are no additional SUM file documents other than what has already been provided." Dkt. #40-1, ¶ 1.

Plaintiff replies that defendant has not produced documents it erroneously deems privileged and argues that claims of privilege cannot protect the SUM file from disclosure. Dkt. #43, p.3. Moreover, plaintiff argues that defendant seems to suggest that information within the SUM file is not discoverable because such materials were created during the pendency of this litigation, which is not the correct standard. Dkt. #43, p.4. Plaintiff notes that defendant's employee testified that documents had been added to the SUM file after the filing of this action. Dkt. #43, p.5 & Dkt. #43-2, p.3. As a

result, plaintiff argues that defendant's representation that the full SUM file was produced as of August of 2018 is incredible. Dkt. #43, p.5. Plaintiff reiterates his request for disclosure of "the entirety of the SUM file or, if withholding any of the additional documents referenced above on the grounds of privilege, produce an updated privilege list." Dkt. #43, p.5.

Rule 501 of the Federal Rules of Evidence provides that, "[i]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." "In a diversity case, the issue of privilege is to be governed by the substantive law of the forum state, here, New York." *Dixon v. 80 Pine St. Corp*., 516 F.2d 1278, 1280 (2d Cir. 1975).

Because the payment or rejection of claims is a part of the regular business of an insurance company, New York provides that reports which aid in the process of deciding whether to pay or reject a claim are discoverable. *Lalka v. ACA Ins. Co.*, 128 A.D.3d 1508, 1508-09 (4th Dep't 2015); *Donohue v. Fokas*, 112 A.D.3d 665, 666-67 (2d Dep't 2013); *Bombard v. Amica Mut. Ins. Co.*, 11 A.D.3d 647, 648 (2d Dep't 2004). Even when such reports are motivated in part by the potential for litigation with the insured, reports prepared by insurance investigators, adjusters or attorneys before the decision is made to pay or reject a claim are not privileged as materials prepared in anticipation of litigation, but are discoverable. *Lalka,* 128 A.D.3d at 1509; *Donohue* 112 A.D.3d at 667; *Bombard*, 11 A.D.3d 648. Thus, documents cannot be deemed

privileged as documents prepared in anticipation of litigation when they are prepared prior to the determination of whether to accept or reject a claim.

Although defendant's employee testified at her deposition that materials had been added to the SUM file subsequent to the filing of this action, defense counsel stated that he understood that plaintiff had been given "100 percent of the file at the time the demand was made even though the case is in litigation." Dkt. #43-2, p.3. Defense counsel did not object to updating production of the SUM file. Dkt. #43-2, pp.3-4. Subsequently, In response to this motion, defense counsel declares that "the entirety of the SUM file, subject to redaction and a privilege log, had already been provided to Plaintiff on or about August 24, 2018" and that "none of the materials plaintiff requests actually exist, anything and everything in the Defendant's possession that can be provided, has been provided by the Defendant;" "Defendant is not withholding any documents." Dkt. #40, ¶ 3. In reliance upon counsel's representation, and absent any specific challenge to defendant's privilege log, plaintiff's motion to compel is denied.

**Expert Witness Depositions**

On March 20, 2019, plaintiff sent a letter to defendant's attorney enclosing subpoenas for the deposition of defendant's expert witnesses, Dr. Elliot Gross and Dr. Victoria L. Londin, asking if counsel would accept service on their behalf. Dkt. #35-10. On April 12, 2019, plaintiff's counsel asked defense counsel to confirm that depositions of defendant's expert witnesses would proceed on the date set forth in the subpoenas. Dkt. #35-11. On April 15, 2019, defense counsel advised that he would speak with the

carrier and advise whether he could accept service of the subpoenas for his expert witnesses. Dkt. #35-11.

By letter to the Court dated April 19, 2019, plaintiff's counsel advised the Court that defendant had not responded to plaintiff's Second Notice to Produce and had not assisted in the scheduling of defendant's expert witnesses. Dkt. #35-12.

By letter to the Court dated April 19, 2019, defendant stated that it was open to selecting dates for expert depositions. Dkt. #40-2. Defendant proffers that it has always been ready, willing and able to produce its experts for deposition, but was unable to accept a subpoena on behalf of its expert witnesses. Dkt. #40, ¶ 7.

By letter dated May 15, 2019, plaintiff advised defendant that he would seek court intervention regarding scheduling the depositions of defendant's expert witnesses. Dkt. #35-14.

By letter dated January 21, 2020, plaintiff advises that "defendants recently offered to produce its two experts with fee schedules that charge for travel time, all preparation time, and a flat deposition fee (rather than a reasonably hourly rate).

Defendants respond that depositions of Dr. Gross and Dr. Londin are scheduled for February 3, 2020 and February 4, 2020, but that plaintiff's counsel has

canceled the depositions because he believed the fees to be excessive. Dkt. #48, p.1. Defendants argue that the cancellation should be deemed a waiver of plaintiff's request to conduct depositions of these experts. Dkt. #48, p.1.

Fed. R. Civ. P. 26(b)(4)(A) provides that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial." Fed. R. Civ. P. 26(b)(4)(E) provides that

> Unless manifest injustice would result, the court must require that the party seeking discovery: (I) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) . . .

"The rule and the case law makes it clear that the parties seeking court intervention to determine a reasonable fee for an expert deposition should do so retrospectively – that is, after the deposition has taken place." *Conte v. Newsday, Inc.*, No. CV 06-4859, 2011 WL 3511071, at *3 (E.D.N.Y. Aug. 10, 2011).

The underlying purpose of Rule 26(b)(4)(E) "is to compensate experts for their time spent participating in litigation and to prevent one party from unfairly obtaining the benefit of the opposing party's expert's work free from cost." *New York v. Solvent Chemical Co., Inc.,* 210 F.R.D. 462, 468 (W.D.N.Y. 2002), *quoting Goldwater v. Postmaster General*, 136 F.R.D. 337, 339 (D.Conn.1991). "In implementing this rule, courts aim to calibrate the fee so that [parties] will not be hampered in efforts to hire quality experts, while [their adversaries] will not be burdened by unfairly high fees preventing feasible discovery and resulting in windfalls to the expert." *Mannarino v. United States*, 218 F.R.D. 372, 374 (E.D.N.Y. 2003) (internal quotation omitted).

"Courts expect some reasonable relationship between the services rendered and the renumeration to which an expert is entitled." *Id.* at 375 (internal quotation omitted). "By its nature, a flat fee runs counter to this principle." *Id.* However, "the expert certainly should be reimbursed for any time during which he was unavailable to do other work." *McHale v. Westcott*, 893 F. Supp. 143, 151 (N.D.N.Y. 1995). Accordingly, plaintiff should be required to compensate defendant's expert witness for the amount of time the expert witness is asked to reserve for the deposition as well as the amount of time spent preparing for a deposition. *Solvent Chem. Co.*, 210 F.R.D. at 471. The Court will not direct advance payment. *See Johnson v. Spirit Airlines, Inc.*, No. CV 07-1874, 2008 WL 1995117 (E.D.N.Y. 2008) (expert witness "may not insist on advance payment, and may not set a flat fee before he knows what he will be called upon to do; he may instead charge only a reasonable hourly fee.").

"While a party may contract with any expert it chooses, the court will not automatically tax the opposing party with any unreasonable fees charged by the expert." *Reit v. Post Props., Inc.*, No. 09 Civ. 5455, 2010 WL 4537044, at *2 (S.D.N.Y. Nov. 4, 2010). Courts consider the following factors in assessing the reasonableness of a requested fee: (1) the witness's area of expertise; (2) the education and training that is required to provide the expert insight that is sought; (3) the prevailing rates for other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the cost of living in the particular geographic area; (6) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26; (7) the fee being charged by the expert to the party who retained him; and (8) fees traditionally charged by the expert on related matters. *Broushet v. Target Corp.*, 274

F.R.D. 432, 433 (E.D.N.Y. 2011). The party seeking to be reimbursed bears the burden of demonstrating that the fee sought is reasonable. *Solvent Chem. Co.*, 210 F.R.D. at 468.

The depositions shall proceed as scheduled. To the extent that the parties cannot come to agreement as to an appropriate fee for the expert witnesses' testimony, a motion shall be filed no later than **February 14, 2020.** Any such motion shall be supported by affidavit and exhibits addressing the issues set forth above and demonstrating the parties' good faith effort to resolve the issue.

### Attorney's Fees

Plaintiff argues that defendant should be required to pay attorney's fees resulting from his dilatory conduct. Dkt. #35-16, p.10 & Dkt. #43, pp.7-8.

Defendant argues that there is no basis in law or fact to award sanctions against it given that it supplemented it's discovery responses and did not refuse to schedule expert depositions, but invited plaintiff to suggest deposition dates. Dkt. #40, ¶¶ 13 & 20.

Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure provides, in relevant part, as follows:

> If the motion [to compel disclosure or discovery] is granted –
> or if the disclosure or requested discovery is provided after
> the motion was filed – the court must, after giving an
> opportunity to be heard, require the party or deponent whose

conduct necessitated the motion, the party or attorney advising that conduct, or both of them to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But, the court must not order this payment if:

 (I) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

 (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

 (iii) other circumstances make an award of expenses unjust.

The Court does not find that the circumstances set forth in this motion warrant payment of expenses for the cost of this motion. Although defendant's initial response to the Second Notice to Produce (Dkt. #35-13), was not timely and cited an incorrect legal standard for disclosure, defendant consistently maintained that there were no additional documents to disclose. With respect to depositions, the Court finds that plaintiff's efforts to schedule expert witness depositions were insufficient to warrant an award of attorney's fees.

   **SO ORDERED.**

**DATED:**  **Buffalo, New York**
     **January 24, 2020**

           _s/ H. Kenneth Schroeder, Jr._
           **H. KENNETH SCHROEDER, JR.**
           **United States Magistrate Judge**