UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JONATHAN B. WILE,

                                    **Plaintiff,**

v.                                                                                     17-CV-1275S(Sr)

**JAMES RIVER INSURANCE COMPANY,**

                                    **Defendant.**

_____

## DECISION AND ORDER

This case was referred to the undersigned by the Hon. William M. Skretny, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters. Dkt. #6.

Plaintiff commenced this action seeking Supplementary Uninsured/Underinsured Motorist ("SUM"), coverage pursuant to an insurance contract with the defendant following a motor vehicle accident on June 22, 2014 by summons and complaint filed in New York State Supreme Court, County of Erie. Dkt. #1. The matter was removed to this Court pursuant to 28 U.S.C. § 1332(a), based upon complete diversity of citizenship. Dkt. #1.

Currently before the Court is defendant's letter motion to compel plaintiff to reimburse defendant's expert witnesses, Dr. Gross and Dr. Londin, for reasonable deposition fees (Dkt. #55), and plaintiff's motion to: (1) strike defendant's privilege log

and compel production of the entire SUM file; (2) compel defendant to produce Dr. Londin in Buffalo for a supplemental deposition; and (3) set reasonable expert deposition fees. Dkt. #56.

### Expert Deposition Fees

Fed. R. Civ. P. 26(b)(4)(A) provides that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial." Fed. R. Civ. P. 26(b)(4)(E) provides that

> Unless manifest injustice would result, the court must require that the party seeking discovery: (I) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) . . .

The underlying purpose of Rule 26(b)(4)(E) "is to compensate experts for their time spent participating in litigation and to prevent one party from unfairly obtaining the benefit of the opposing party's expert's work free from cost." *New York v. Solvent Chemical Co., Inc.,* 210 F.R.D. 462, 468 (W.D.N.Y. 2002), *quoting Goldwater v. Postmaster General*, 136 F.R.D. 337, 339 (D.Conn.1991). "In implementing this rule, courts aim to calibrate the fee so that [parties] will not be hampered in efforts to hire quality experts, while [their adversaries] will not be burdened by unfairly high fees preventing feasible discovery and resulting in windfalls to the expert." *Mannarino v. United States*, 218 F.R.D. 372, 374 (E.D.N.Y. 2003) (internal quotation omitted); *See Windsor Securities, LLC v. Arent Fox LLP*, 2018 WL 4360769, at *1 (S.D.N.Y. Aug. 7, 2018) (court should not approve expert fees that are so high as to impair a party's access to necessary discovery) (internal quotation omitted).

"While a party may contract with any expert it chooses, the court will not automatically tax the opposing party with any unreasonable fees charged by the expert." *Reit v. Post Props., Inc.*, No. 09 Civ. 5455, 2010 WL 4537044, at *2 (S.D.N.Y. Nov. 4, 2010). "Courts expect some reasonable relationship between the services rendered and the renumeration to which an expert is entitled." *Mannarino*, 218 F.R.D. at 375 (internal quotation omitted).  Courts consider the following factors in assessing the reasonableness of a requested fee: (1) the witness's area of expertise; (2) the education and training that is required to provide the expert insight that is sought; (3) the prevailing rates for other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the cost of living in the particular geographic area; (6) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26; (7) the fee being charged by the expert to the party who retained him; and (8) fees traditionally charged by the expert on related matters. *Broushet v. Target Corp.*, 274 F.R.D. 432, 433 (E.D.N.Y. 2011). The party seeking to be reimbursed bears the burden of demonstrating that the fee sought is reasonable. *Solvent Chem. Co.*, 210 F.R.D. at 468.

An "expert certainly should be reimbursed for any time during which he was unavailable to do other work." *McHale v. Westcott*, 893 F. Supp. 143, 151 (N.D.N.Y. 1995).  Thus, a party should be required to compensate an opposing party's expert witness for the amount of time the expert witness is asked to reserve for the deposition as well as the amount of time spent preparing for a deposition. *Solvent Chem. Co.*, 210 F.R.D. at 471. However, the Court must be wary that preparation time is focused upon preparation for the deposition rather than general trial preparation. *Nnodimele v. city of*

*New York*, No. 2015 WL 4461008, at *4 (E.D.N.Y. July 21, 2015). Preparation time comparable in length to that of the deposition itself is generally reasonable. *Windsor Securities, LLC*, 2018 WL 4360769, at *1. As a general rule, "courts award the same per hour fee for preparation as they do for the time being deposed." *Broushet*, 274 F.R.D. at 434 (collecting cases and rejecting request to reduce rate for preparation by half as unsupported by the case law in this circuit); *But See Junger v. Singh*, 16-CV-564, 2018 WL 4518648, at *4 (W.D.N.Y. Sept. 20, 2018) (applying method of reducing fee from in-court/deposition testimony rate to 50% for preparation time). With respect to travel time, the general rule is that compensation should be half the expert's hourly rate. *Mannarino*, 218 F.R.D. at 377; *But See Junger*, 2018 WL 4518648, at *4 (applying method of reducing fee from in-court/deposition testimony rate to 25% for travel time).

Dr. Gross

Elliott Gross, M.D., is a Fellow with the American Academy of Neurology, a Diplomate with the American Board of Psychiatry and Neurology and an Assistant Clinical Professor of Neurology at Columbia College of Physicians and Surgeons. Dkt. #55-4, p.2. Dr. Gross seeks $250 for travel time plus $400 per hour for three hours of preparation and $650 per hour for three hours of deposition for a total of $3,400. Dkt. #55-2, p.3.

Defendant argues that Dr. Gross has significant expertise in an area of medicine where expert witnesses are difficult to retain. Dkt. #55, p.3. Defendant notes that other experts with similar expertise have even higher rates and that an expert in

Western New York, John J. Leddy, M.D., was unavailable because he had provided treatment to plaintiff. Dkt. #55, p.3. For example, Louis N. Mananas, M.D., would have charged a fee of $3,150 for the first hour and $785 for every additional 15 minutes. Dkt. #55-5, pp.7-16. Defendant states that it paid Dr. Gross $5,375 for his IME and expert report and will pay him $8,500 for trial testimony. Dkt. #55, p.3 & Dkt. #55-7, p.5.

Plaintiff objects that Dr. Gross' fee for travel time is more than half the hourly rate for preparation and deposition time. Dkt. #56-1, p.7. Plaintiff notes that Dr. Gross' fee is several time higher than his usual rate for an independent medical examination, which he testified at deposition was $760. Dkt. #62-1, ¶ 13. Plaintiff also objects to using New York City cost of living as a barometer given that Dr. Gross used to travel to Buffalo monthly. Dkt. #62, p.5.

Balancing the factors and considering the facts set forth above, the Court finds that $650 per hour is a reasonable hourly rate for Dr. Gross' deposition testimony. *Cf. Junger*, 2018 WL 4518648, at *4 ($500 per hour reasonable for cardiologist from Richmond, Virginia). Moreover, the Court finds that three hours is a reasonable amount of time for Dr. Gross' deposition preparation. Finally, the Court finds Dr. Gross' travel charge of $250 to be reasonable. Accordingly, plaintiff shall reimburse defendant $3,400 in reasonable fees for the cost for Dr. Gross' deposition testimony.

### Dr. Lodin

Victoria Londin, Ph.D., maintains a private neuropsychology practice in Cross River, New York. Dkt. #55-3, p.2. Dr. Londin seeks $250 for travel time plus

$1,000 per hour for two hours of preparation and three hours of deposition for a total of $5,250. Dkt.#55-2, p.2.

Defendant argues that Dr. Lodin has significant expertise in an area of medicine where expert witnesses are difficult to retain. Dkt. #55, p.3. Defendant notes that other experts with similar expertise have even higher rates. Dkt. #55, p.3. For example, Richard P. DeBendetto, Ph.D., would have charged a flat fee of $6,500. Dkt. #55, p.3. & 55-5, pp. 2-5. Defendant states that it paid Dr. Lodin $5,000 for her IME and expert report and will pay her $7,500 for trial testimony. Dkt. #55, p.3 & Dkt. #55-6, p.5.

Plaintiff objects that Dr. Lodin charges the same hourly rate for preparation as for time spent in deposition and that her hourly rate is significantly higher than Dr. Gross' or comparable local experts . Dkt. #56-1, p.7.  Plaintiff proposed to pay Dr. Lodin for the same amount of hours and at the same rate as Dr. Gross. Dkt. #56-1, p.8. Plaintiff objects to Dr. Lodin using New York City cost of living as a barometer given that Dr. Lodin regularly works in Buffalo. Dkt. #62, p.5.

While the Court accepts the amount of time spent by Dr. Londin as reasonable, the Court concludes that Dr. Lodin's hourly rate is excessive and, balancing the factors and considering the facts set forth above, sets $500 as a reasonable hourly rate. *See, e.g, Smith v. New York Presbyterian Hosp.*, 05Civ. 7729, 2012 WL 4903256, at *3 (S.D.N.Y. Oct. 12, 2012) (concluding after survey that $350-$400 was reasonable rate for psychiatrists). Accordingly, plaintiff shall reimburse defendant $2,750.

**Supplemental Deposition of Dr. Londin**

Plaintiff seeks to compel a supplemental deposition of Dr. Londin at defendant's expense because Dr. Londin failed to produce her entire file at her deposition. Dkt. #56-1, ¶ 2. Specifically, plaintiff seeks Dr. Londin's contemporaneous notes of her medical examination of plaintiff and emails relating to plaintiff. Dkt. #56-1, ¶ 48.

By email and first-class mail dated March 20, 2019, plaintiff enclosed subpoenas for defendant's expert witnesses and asked if defendant was willing to accept service. Dkt. #56-9, p.1. The subpoena to Dr. Londin directed her to bring with her to the deposition her entire file on plaintiff. Dkt. #56-9, p.3. Defendant declares that it never accepted service of the subpoenas. Dkt. #63, ¶ 13. By email dated January 31, 2020, plaintiff's counsel reminded defendant to make sure that defendant's expert witnesses brought "their hard copy files to their depositions as well as their laptops for those parts of their files not in hard copy." Dkt. #56-13, p.1.

At her deposition, Dr. Londin testified that she did not bring her "raw data" to the deposition, which she defined as the test paper materials that were used to record plaintiff's responses and any notes she would have written while she was interviewing and administering tests to plaintiff. Dkt. #62-3, pp.4-5. Dr. Londin explained that her notes could potentially contain observational comments and/or hand scoring of the data. Dkt. #62-3, p.8. Dr. Londin explained that such raw data can only be released to another psychologist who can understand what the data means. Dkt. #62-3, p.8.

By letter dated February 10, 2020, plaintiff requested that Dr. Londin travel to Buffalo for a supplemental deposition with her entire file. Dkt. #56-11, pp.1-2.

By letter dated February 14, 2020, defendant objected to any further deposition, arguing that Dr. Londin's personal notes are privileged and could only be released subject to a duly executed HIPAA compliant authorization by plaintiff and, even then, her notes could only be released to another psychologist. Dkt. #56-12, p.1.

The Court is aware that the American Psychological Association's Ethical Principles of Psychologists and Code of Conduct ("APA Code of Conduct"), requires psychologists to make reasonable efforts to maintain the integrity and security of test materials and other assessment techniques. The definition of test materials includes manuals, instruments, protocols and test questions or stimuli, but does not include test data, which is defined as raw and scaled scores, client/patient responses to test questions or stimuli and psychologists' notes and recordings concerning client/patient statements and behavior during an examination. www.apa.org/ethics/code/index at 9.04 and 9.11. The APA Code of Conduct specifically recognizes that those portions of test materials that include client/patient responses are included in the definition of test data that may be released to the client/patient pursuant to a release. *Id.* at 9.04. The APA Code of Conduct also recognizes that in many instances, release of confidential information is regulated by law, but otherwise acknowledges that psychologists may refrain from releasing test data to protect a client/patient or others from substantial harm or to prevent misuse or misrepresentation of the data or the test. *Id.*

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires that an expert witness disclose, *inter alia*, the facts or data considered by the expert witness in forming all opinions the witness will express. The Advisory Committee's notes to the 1993 amendment of Rule 26 of the Federal Rules of Civil Procedure specifically state that the expert witness disclosure include the data and other information considered by the expert. Absent release of such materials, "there is no way to check the quality and accuracy of the [expert] witness's work." *Bain v. Wrend*, No.5:15-cv-202, 2017 WL 11505976, at *2 (D. Vt. Sept. 6, 2017). Accordingly, Dr. Londin shall disclose her raw data and, if deemed necessary by plaintiff, submit to a supplemental deposition *via* videoconference limited to questions related to the raw data, within 60 days of the entry of this decision. Plaintiff shall pay defendant at the rate set by the Court for her deposition time, but defendant shall bear the cost of any preparation time.

**Privilege Log for SUM file**

Plaintiff seeks to strike the defendant's privilege log and compel production of defendant's entire SUM file, or, in the alternative, seeks *in camera* review of the documents withheld as privileged. Dkt. #56-1, ¶ 2.

The SUM file produced by defendant on August 24, 2018 was redacted and accompanied by a privilege log. Dkt. #56-1, ¶¶ 9-10.

By letter dated February 10, 2020, plaintiff argued that the privilege log did not sufficiently state what the items claimed to be privileged are. Dkt. #56-11, p.1.

-9-

Based upon the deposition testimony of Barbara Jones regarding the content of some of the documents subject to privilege, plaintiff argued that documents had been improperly redacted. Dkt. #56-11, p.1. For example, plaintiff argues that records of an independent medical examination of plaintiff and Ms. Jones' notes regarding plaintiff's claim are not privileged. Dkt. #56-11, p.1.

Rule 26(a)(5)(A) of the Federal Rules of Civil Procedure provides that whenever a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed - and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim. Local Rule 26(d) provides that where a party asserts a claim of privilege with respect to documents, the party shall provide the following information: (a) the type of document, *i.e.*, letter or memorandum; (b) the general subject matter of the document; (c) the date of the document; and (d) such other information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author of the document, the addresses of the document, and any other recipients shown in the document, and where not apparent, the relationship of the author, addresses, and recipients to each other.

In the instant case, defendant's privilege log indicates that 45 unidentified and undated documents were redacted because of reserve information, attorney work

product, opinions or legal theories. Dkt. #56-4. This is insufficient. Moreover, plaintiff did raise the argument that defendant had improperly withheld a portion of the SUM file on privilege grounds in his prior motion to compel (Dkt. #35-16, p.5), which the Court resolved on alternate grounds. Dkt. #50. Accordingly, the Court does not deem the issue waived and directs that defendant provide a detailed privilege log and any legal argument that defendant wishes the Court to consider in support of its claim of privilege to plaintiff and the Court, and provide copies of the documents it seeks to protect from disclosure for *in camera* review to the Court within 30 days of the entry of this decision.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
                  **October 9, 2020**

                                              *s/ H. Kenneth Schroeder, Jr.*
                                              **H. KENNETH SCHROEDER, JR.**
                                              **United States Magistrate Judge**