UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JONATHAN B. WILE,

                    Plaintiff,

        v.                                              **DECISION AND ORDER**
                                                        17-CV-1275S
JAMES RIVER INSURANCE COMPANY,

                    Defendant.

## I.    Introduction

This is a removed diversity action.  Plaintiff, a driver for Lyft, was involved in a rear-end collision in June 2014 while awaiting a fare.  He sought coverage from Lyft's insurer, Defendant James River Insurance Company ("Defendant" or "James River"), because Lyft promised to provide excess coverage to its drivers.  Defendant disputes the magnitude of Plaintiff's injuries and declined coverage, offering to settle Plaintiff's claim for a fraction of the Supplemental Underinsured Motorist Coverage (or "SUM") limit.  Defendant argues that Plaintiff had to arbitrate the disputed level of coverage under the terms of its SUM policy.  Plaintiff instead sued to recover the full limit of SUM coverage.

Before this Court is Defendant's Motion for Summary Judgment (Docket No. 37) dismissing this case.  For the reasons that follow, that Motion is granted in part (dismissing the Third Cause of Action alleging violation of New York General Business Law § 349) and denied in part (upholding the First Cause of Action for breach of contract and Second Cause of Action for breach of the duty of good faith and fair dealing).

## II.   Background

### A.  Plaintiff's Accident, June 22, 2014

Plaintiff drove for Lyft as it began providing service in New York (Docket No. 73, Pl. Aff. ¶¶ 2-5).  On the evening of June 21, 2014, Plaintiff logged into the Lyft app and began his shift (id. ¶ 25; see Docket No. 37, Def. Statement ¶¶ 2, 17).  After midnight on June 22, Lyft matched Plaintiff with a passenger (Docket No. 73, Pl. Aff. ¶ 26).  With that match, Plaintiff was under Lyft's full insurance coverage which included SUM coverage from Defendant James River.

Howard Patton, III, rear-ended Plaintiff's car while Plaintiff arranged to pick up his passenger (id. ¶ 27).  Plaintiff was the sole occupant of the vehicle in the accident (Docket No. 37, Def. Statement ¶ 1).

The collision caused immediate injury to Plaintiff's nose and head (see Docket No. 73, Pl. Aff. ¶ 27).   Plaintiff listed serious personal injuries he suffered from this collision:  traumatic brain injury (or "TBI"), spinal injuries, permanent central vestibular deficit that affected his ocular motor function and cognition, lumbago, ulnar nerve injury, left hand tingling, back pain, fatigue, and other injuries (id. ¶ 28; see Docket No. 72,  Pl. Atty. Aff. ¶¶ 13-14, 16-19, Exs. E, F, H, I, J, K; Docket No. 73, Pl. Aff. ¶¶ 28, 29-30, Ex. D). Plaintiff claimed his injuries were "well in excess of the available SUM limit of $1,000,000" (Docket No. 1, Notice of Removal, Ex. B, Compl. ¶¶ 8-9).

Defendant, however, "hotly contested" the extent of Plaintiff's injuries  and believed some of Plaintiff's injuries were pre-existing (Docket No. 37, Def. Statement ¶ 4).

Defendant's claims examiner, Barbara Jones, assessed Plaintiff's injuries and medical records (Docket No. 37, Def. Statement ¶¶ 41, 46; Docket No. 37, Def. Atty. Aff.

¶ 12, Ex. I, Jones EBT Tr. at 91-92).   Jones testified that Defendant settled typical TBI claims with 100% liability in the $100,000 to $300,000 range.  Plaintiff contends, however, that his injuries were more severe than the typical insured.  (Docket No. 70, Pl. Statement ¶ 46; see Docket No. 37, Def. Atty. Aff. Ex. I, Jones EBT Tr. at 91, 92.)  Plaintiff also objects to the extent Jones conducted medical and other record review in formulating Defendant's offer (Docket No. 70, Pl. Statement ¶¶ 52, 59, 45, 53, 56-57).

B. Plaintiff's Medical Records

In July 2014, Plaintiff contacted Defendant about the accident (Docket No. 37, Def. Statement ¶ 20).   Plaintiff contacted Defendant again in March 2015 (id. ¶¶ 21, 39). Defendant later requested Plaintiff's medical record (id. ¶ 41).   Plaintiff now argues that Defendant was advised that it needed his complete medical record to adjust his claim (Docket No. 70, Pl. Statement ¶ 56).  On or about March 9, 2017, Plaintiff's counsel sent Plaintiff's medical record to Defendant, and Jones acknowledged receipt on March 13, 2017 (Docket No. 1, Ex. B, Compl. ¶¶ 26-27).  On April 7, 2017, Plaintiff's counsel sent another copy of these records to Defendant (id. ¶ 28).

On April 18, 2017, Jones requested authorizations, additional medical record, and other documents (id. Compl. ¶ 29; Docket No. 37, Def. Statement ¶ 56; Docket No. 70, Pl. Statement ¶ 56).  On June 15, 2017, Defendant received authorizations and medical records (Docket No. 1, Ex. B, Compl. ¶ 30; see Docket No. 37, Def. Statement ¶ 62 (received materials forwarded to defense counsel on June 30, 2017)).

Meanwhile, on July 19, 2017, Defendant made its offer to Plaintiff (Docket No. 37, Def. Statement ¶ 63; Docket No. 70, Pl. Statement ¶ 63).

Defendant claims it obtained additional medical records and scheduled independent medical examinations of Plaintiff (Docket No. 37, Def. Statement ¶ 66).   It requested additional records on or about July 24, 2017 (Docket No. 70, Pl. Statement ¶ 68).   Plaintiff replies that no independent medical examinations were scheduled before commencement of this action (see Docket No. 70, Pl. Statement ¶ 66).

Defendant states that, as of August 2017, the parties "understood that there would be continued efforts to resolve this case," as Defendant sought medical examinations (Docket No. 37, Def. Statement ¶ 70).   On August 15, 2017, Plaintiff submitted to Defendant the findings of one of his treating physicians, Dr. John Leddy (Docket No. 70, Pl. Statement ¶ 69).

Meanwhile, on November 20, 2017, Plaintiff commenced this action.   Plaintiff later observed that it was one year before Defendant conducted an independent examination and Defendant did not change its offer since July 2017 (Docket No. 70, Pl. Statement ¶ 70).

Dr. Elliott Gross independently examined Plaintiff on October 5, 2018, and found that Plaintiff had no post-concussion syndrome or post-concussion vestibular problems (Docket No. 37, Def. Statement ¶¶ 82-83).   Independent neuropsychologist Dr. Victoria Londin examined him on November 2, 2018, and concluded that there were no neurocognitive deficits present and that Plaintiff's profile on neuropsychological tests suggest that his neuro-cognitive abilities are well-retained.   Dr. Londin opined that Plaintiff could resume usual and customary activities as a practicing attorney.   (Id. ¶¶ 79-80.) Dr. Londin also concluded that Plaintiff did not sustain a TBI from the accident (id. ¶ 81).

Plaintiff questions the independence of Drs. Gross and Londin, arguing their findings were "results-oriented" (Docket No. 70, Pl. Statement ¶¶ 79-83).  Plaintiff also contends Dr. Gross's findings were rushed (id. ¶¶ 82-83).

### C.  Lyft and Insurance

Lyft did not require Plaintiff obtain commercial insurance to drive for Lyft (Docket No. 73, Pl. Aff. ¶ 7).  Instead, Lyft published its "Lyft Insurance Overview," where Lyft stated it would provide insurance coverage dependent on whether the Lyft driver (such as Plaintiff) had a passenger (id. ¶¶ 8-9, Ex. A).  Additional SUM coverage arose when there was a match between a Lyft driver and a passenger until the passenger completes the ride (id. ¶ 9, Ex. A).  Lyft's insurance policy from Defendant covered any "'auto' of the Private Passenger type while" the "auto" is operated by a named operator and the named operator logged in and recorded acceptance of Lyft's application to transport passengers (Docket No. 37, Def. Atty. Aff. Ex. F, at 2 (Business Auto Declarations), 25 (Covered Auto Designation Symbol)).

Defendant James River provided insurance to Lyft, furnishing up to $1 million in SUM coverage less a setoff of $100,000 (Docket No. 73, Pl. Aff. ¶ 10, Ex. B, Lyft's certificate of insurance; Docket No. 37, Def. Atty. Aff. Ex. F).  Plaintiff claims he chose to drive for Lyft on its representations that Lyft would furnish adequate New York insurance coverage to him (Docket No. 73, Pl. Aff. ¶ 11; see Docket No. 70, Pl. Statement ¶ 90).

Plaintiff later learned Defendant was not an authorized insurer in New York (Docket No. 73, Pl. Aff. ¶ 12; Docket No. 70, Pl. Statement ¶¶ 91-104).  A Virginia insurer (James River) issued a policy[1] to insure a California company (Lyft) which represented that it

---

[1] Docket No. 37, Def. Atty. Aff. Ex. F, Policy No. CA43600001-1.

provided SUM coverage for a driver in New York (Plaintiff) (Docket No. 70, Pl. Statement ¶ 94).  Plaintiff concludes that Defendant's SUM coverage did not meet the requirements under New York law (Docket No. 73, Pl. Aff. ¶¶ 12, 15).

Defendant itself later internally questioned whether this policy covered Plaintiff in New York (Docket No. 70, Pl. Statement ¶¶ 95-98).  As of August 1, 2014, an endorsement in Defendant's policy expressly excluded coverage for New York Lyft drivers (id. ¶¶ 100, 102).  Since Plaintiff's accident occurred months before this changed endorsement, Defendant concluded that Plaintiff remained under the SUM policy.  Plaintiff nevertheless claims that this policy did not comply with New York statutory form.  (Id. ¶¶ 103-04.)  Counsel advised Defendant that Plaintiff's claim should be treated as a regular uninsured motorist matter (id. ¶ 106).

## D.  Defendant's Adjustment and Offer

Plaintiff then settled his claims against Patton for $50,000 under Patton's policy and received $50,000 more from his own insurer (id. Docket No. 37, Def. Statement ¶¶ 3, 4).  Defendant acknowledged that full underlying policy limits had been tendered (id. ¶ 44).  After this setoff, Plaintiff sought SUM coverage for the full $900,000 (Docket No. 37, Def. Statement ¶¶ 4, 5, 27).  On July 19, 2017, Defendant initially offered to settle Plaintiff's SUM coverage claim for an additional $50,000 (or $150,000 total recovery for Plaintiff) (Docket No. 37, Def. Statement ¶ 63; Docket No. 70, Pl. Statement ¶ 63; Docket No. 37, Def. Memo. at 1; see Docket No. 37, Def. Statement ¶ 29), which Plaintiff rejected (Docket No. 37, Def. Statement ¶ 29).

Defendant argues that, under the policy, Plaintiff had to arbitrate the disputed coverage (Docket No. 37, Def. Memo. at 8-10).

6

E.  Procedural History

1.  Removal and Pleadings

On November 20, 2017, Plaintiff sued Defendant in New York State Supreme Court (Docket No. 1, Notice of Removal, Ex. B).

The First Cause of Action alleges Defendant breached the insurance policy by failing to pay the full policy limits of the SUM coverage, or $900,000 (id. Compl. ¶¶ 20-24; Docket No. 37, Def. Statement ¶ 8).

The Second Cause of Action alleges Defendant committed acts of bad faith in failing to settle the SUM claim for the $900,000 sought by Plaintiff (Docket No. 1, Notice of Removal, Ex. B, Compl. ¶ 32; Docket No. 37, Def. Statement ¶ 9).  Plaintiff claims he thus incurred the costs of this action (Docket No. 1, Notice of Removal, Ex. B, Compl. ¶ 35).

The Third Cause of Action claims that Defendant engaged in a pattern of deceptive acts and unfair practices violative of New York General Business Law (id. ¶¶ 37-42; Docket No. 37, Def. Statement ¶ 10).

On December 6, 2017, Defendant removed this case to this Court (Docket No. 1) and answered (Docket No. 2).

2.  Defendant's Motion for Summary Judgment (Docket No. 37)

Defendant later moved for Summary Judgment (Docket No. 37)[2].  After motion practice surrounding Plaintiff's Motion to Compel and to stay proceedings on the Motion

---

[2]In support of its Motion, Defendant submits its Statement of Undisputed Facts ("Def. Statement"), Memorandum of Law, its counsel's Affidavit with exhibits, Docket No. 37.

In opposition, Plaintiff submits his Statement of Facts ("Pl. Statement") Docket No. 70; his Memorandum, Docket No. 71; his Attorney's Affidavit with exhibits, Docket No. 72; and Plaintiff's own Affidavit with exhibits, Docket No. 73.

for Summary Judgment (Docket Nos. 35, 41, 42, 46-47, 50, 67, 69), responses to the Summary Judgment Motion were due February 4, 2021, and reply by February 18, 2021 (Docket No. 69; cf. Docket No. 39).  Following Plaintiff's response (Docket Nos. 70-73) and Defendant's reply (Docket No. 74), the motion was deemed submitted without oral argument.

### III.   Discussion

A.  Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.

The movant seeking summary judgment has the burden (through pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials, Fed. R. Civ. P. 56(c)(1)) to demonstrate the absence of a genuine issue of material fact, Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion," Addicks v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is

---

Replying, Defendant submits its Reply Memorandum with supplement of the tables of contents and authorities, and Defendant's Attorney's replying Affidavit, Docket No. 74.  Defendant, however, has not file a response to Plaintiff's supplemental Statement of Facts.

summary judgment proper," <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue of fact for trial," <u>Anderson</u>, <u>supra</u>, 477 U.S. at 249.  "Assessment of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment," <u>Rule v. Brine, Inc.</u>, 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment, <u>Anderson</u>, <u>supra</u>, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful," <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  That is, there must be evidence from which the jury could reasonably find for the nonmoving party, <u>Anderson</u>, <u>supra</u>, 477 U.S. at 252.

This Court's Local Civil Rules require that movant submit "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," W.D.N.Y. Loc. Civ. R. 56(a)(1), and the opponent to submit a response to each numbered paragraph in the movant's statement, <u>id.</u> R. 56(a)(2).  Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, <u>id.</u>

B.  Arbitration

1.  N.Y. SUM Coverage Regulations

The parties differ as to which terms apply dealing with coverage disputes between the insured and insurer.

New York Insurance Law requires out of state insurers to be licensed or authorized to do business in New York, N.Y. Ins. Law § 1106.  Unlicensed insurance activity by a foreign insurer is prohibited, see Kelly v. Bremmerman, 23 A.D.2d 346, 351, 290 N.Y.S.2d 971, 977 (4th Dep't 1965).  In Kelly, the Pennsylvania Insurance Commissioner sued as statutory liquidator of a dissolved insurer to collect assessment on defendant's policy, 23 A.D.2d at 348, 290 N.Y.S.2d at 973.  The Fourth Department found as an unresolved issue the legality of the contract of insurance given that insurer was not licensed to do insurance business in this state, id. at 351, 290 N.Y.S.2d at 976-77.  Since New York Insurance Law prohibits doing unauthorized insurance business, the contract would have been deemed violative of this statute and the assessment order on that policy would be unenforceable, id. at 351, 290 N.Y.S.2d at 977.

Section 3103 of the Insurance Law, however, provides that

> "Except as otherwise specifically provided in this chapter, any policy of insurance or contract of annuity delivered or issued for delivery in this state in violation of any of the provisions of this chapter shall be valid and binding upon the insurer issuing the same, but in all respects in which its provisions are in violation of the requirements or prohibitions of this chapter it shall be enforceable as if it conformed with such requirements or prohibitions,"

N.Y. Ins. Law § 3103(a) (emphasis added); see Posner v. U.S. Fidelity & Guar. Co., 33 Misc.2d 653, 655, 226 N.Y.S.2d 1011, 1014 (Sup. Ct. Sullivan County), aff'd sub nom. Posner v. N.Y. Mut. Underwriters, 16 A.D.2d 1013, 229 N.Y.S.2d 160 (3d Dep't 1962).

A liability policy issued or delivered in this state must contain statutory provisions "that are equally or more favorable to the insured," N.Y. Ins. Law § 3420(a) (Docket No. 71, Pl. Memo. at 6).  "Insurance Law (§ 3420[f]) mandates that any provisions contained in a policy issued in accordance with the aforesaid statute shall be construed as if the provisions of the statute were embodied therein," Passaro v. Metropolitan Prop. and Liab. Ins. Co., 128 Misc.2d 21, 23, 487 N.Y.S.2d 1009, 1011 (Sup. Ct. Queens County 1985), aff'd, 124 A.D.2d 647, 507 N.Y.S.2d 836 (2d Dep't 1986). Section 3420(f)(2) required an insurer (at the option of the insured) to offer SUM coverage, N.Y. Ins. Law § 3420(f)(2), and New York insurance regulations specified the minimum terms of that SUM coverage, 11 N.Y.C.R.R. §§ 60-2.0(a)(1)(i), 60-2.3(c) (2021) (id. at 7; see Docket No. 72, Pl. Atty. Aff. ¶ 20, Ex. L (version of regulations as of July 2017)).  In New York, "every SUM endorsement issued shall be the SUM endorsement as prescribed by subdivision (f) of this section," 11 N.Y.C.R.R. § 60-2.3(c).

2.  James River's SUM Coverage and New York SUM Regulations

Attached as an Appendix is a comparison of the relevant terms of the New York SUM regulations and Defendant's SUM provisions.  Both Defendant's SUM provisions and New York insurance regulations afford arbitration when there was a coverage dispute, 11 N.Y.C.R.R. § 60-2.3(f), Conditions Sec. 11(a) (Docket No. 37, Def. Atty. Aff. Ex. F, at 33, Uninsured Motorists Coverage—Bodily Injury Sec. 5.a.).  They differ whether the insured had to arbitrate coverage disputes.  Defendant James River's SUM policy requires the insured arbitrate (Docket No. 37, Def. Atty. Aff. Ex. F, at 33, Uninsured Motorists Coverage—Bodily Injury Sec. 5.a.) while arbitration under New York SUM

regulations is conducted at the option of the insured, 11 N.Y.C.R.R. § 60-2.3(f), Conditions Sec. 11(a).

Both SUM provisions exclude legal actions by the insured against the SUM insurer, 11 N.Y.C.R.R. § 60-2.3(f), Conditions Sec. 14 (Docket No. 37, Def. Atty. Aff. Ex. F, at 32, Uninsured Motorists Coverage—Bodily Injury Sec. 2).   Defendant's policy excludes litigation if the insured had not first arbitrated the coverage dispute.

### 3.   Applicability of Defense Waiver of Arbitration

Plaintiff argues that Defendant has not moved to compel arbitration here and thus waived that procedure (Docket No. 71, Pl. Memo. at 9 n.2, citing National Union Fire Ins. Co. v. NCR Corp., 376 F. App'x 70, 71-72 (2d Cir. 2010) (summary Order)).   Defendant, however, removed this case merely to obtain this Court's jurisdiction to resolve the dispute as to the proper forum and is not seeking arbitration as relief in this action.   Rather, Defendant argues Plaintiff's sole method for challenging the extent of SUM coverage is in arbitration (see Docket No. 37, Def. Memo. at 9, 12; Docket No. 74, Def. Reply Memo. at 6).

Moreover, the summary Order in National Union Fire Insurance Co., supra, 376 F. App'x 70, noted there was no bright line rule when a party has waived its right to arbitration.   Waiver depends upon the particular facts of each case and the key to waiver analysis is the prejudice to the opponent.   Id. at 72 (quotation omitted).   This prejudice has been defined as inherent unfairness in terms of delay, expense, or damage where one party litigates an issue and then later seeks arbitration, id. (citing In Re Crysen/Montenay Energy Co., 226 F.3d 160, 162-63 (2d Cir. 2000)).

Here, Plaintiff commenced this litigation rather than arbitrate.  Defendant removed for diversity jurisdictional purposes.  Defendant has not waived arbitration by removing and defending this action.

### C.  First Cause of Action:  Breach of Contract under New York Law

#### 1.  Parties' Contentions

Defendant argues that it did not breach its SUM policy by not paying Plaintiff $900,000 for his accident (Docket No. 37, Def. Memo. at 4-5).  An insurer cannot be compelled to concede liability and settle what it deems to be a questionable claim (id. at 5, citing New England Ins. Co. v. Healthcare Underwriters Mut. Ins., 295 F.3d 232, 238 (2d Cir. 2002) (citing N.Y. P.J.I.)); see St. Paul Fire and Marine Ins. Co. v. United States Fid. & Guar. Co., 42 N.Y.2d 977, 978, 404 N.Y.S.2d 552, 553 (1978).

Plaintiff argues that Defendant breached its insurance policy by failing to settle for the full amount of the SUM limit, contending that he suffered damages from his TBI and other injuries that equaled $900,000 (or minimally raises issues of fact as to valuation of his damages).  He focuses on Defendant's deviation from the required terms of SUM coverage under New York law (Docket No. 71, Pl. Memo. at 6-11; Docket No. 72, Pl. Atty. Aff. ¶ 33; Docket No. 72, Pl. Atty. Aff. ¶ 4).  Plaintiff contends mandatory arbitration is a "red herring" since New York insurance regulations gave Plaintiff "a clear right to resolution of his claims in a judicial forum" rather than mandatory arbitration (Docket No. 71, Pl. Memo. at 11, citing 11 N.Y.C.R.R. § 60-2.3(f)).

#### 2.  Applicable Law

To state a breach of contract under New York common law, Plaintiff must prove the existence of a contract with Defendant, performance of his obligations under the

contract, breach of that contract by Defendant, and damages to Plaintiff caused by Defendant's breach, e.g., First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998); Acquest Holdings, Inc. v. Travelers Cas. & Sur. Co., 217 F. Supp.3d 678, 686 (W.D.N.Y. 2016) (Wolford, J.).

### 3.  Analysis

#### a.  Which Contract Applies?

The parties do not agree which contract—Defendant's policy or New York State SUM provisions—controls.  The insurance policy James River issued was to Lyft (Docket No. 73, Pl. Atty. Aff. ¶ 10, Ex. B).  Plaintiff is the third-party beneficiary of that policy through his agreement to drive for Lyft.  Thus, he is an additional insured under the policy as the operator of an "auto" used to transport Lyft passengers.  As a third-party beneficiary, Plaintiff ordinarily can sue as intended beneficiary of Lyft's insurance policy, see Affiliated FM Ins. Co. v. Keuhne + Nagel, Inc., 328 F. Supp.3d 329, 338 (S.D.N.Y. 2018).  For a third-party to enforce an insurance policy "it must be demonstrated that the parties intended to insure the interest of [the third party] who seeks to recover on the policy," Stainless, Inc. v. Employers Fire Ins. Co., 69 A.D.2d 27, 33, 418 N.Y.S.2d 76, 80 (1st Dep't 1979), aff'd, 49 N.Y.2d 924, 428 N.Y.S.2d 675 (1980).  Here, Lyft's insurance policy from Defendant manifested that intention (Docket No. 37, Def. Atty. Aff. Ex. F at 2, 25).

Defendant's policy comes from an insurer not authorized or licensed to transact insurance business in New York, N.Y. Ins. Law § 1106.  Under Insurance Law § 3103, however, Defendant's insurance contract remains enforceable against the insurer even if it violates provisions of the Insurance Law, N.Y. Ins. L. § 3103(a).  Such an insurance

policy entered with an unlicensed insurer is malum prohibitum and does not void the policy, see John E. Rosasco Creameries, Inc. v. Cohen, 276 N.Y. 274, 278, 11 N.E. 908, 909 (1937); see also Dornberger v. Met Life Ins. Co., 961 F. Supp. 506, 533-34 (S.D.N.Y. 1997).  The New York Court of Appeals in Rosasco held that

> "Illegal contracts are generally unenforcible [sic].  Where contracts which violate statutory provisions are merely malum prohibitum, the general rule does not always apply.  If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy or appropriate individual punishment, the right to recover will not be denied,"

276 N.Y. at 278, 11 N.E. at 909.  Insurance Law § 1106 does not expressly deprive unlicensed insurers their right to sue (and presumably be sued) in this state.  Thus, Defendant's policy is enforceable against it despite James River not being licensed to conduct insurance business in New York.

As a policy in New York, the Insurance Law and regulations apply to Defendant's SUM policy.  Where a policy violates "the requirements or prohibitions of the Insurance Law, the policy is enforceable as if it conformed with such requirements or prohibitions," Bersani v. General Acc. Fire & Life Assur. Corp., Ltd., 36 N.Y.2d 457, 460, 369 N.Y.S.2d 108, 111 (1975).  These regulations, including the regulatory minimum of SUM coverage under 11 N.Y.C.R.R. § 60-2.3(c), thus conform the terms of Defendant's SUM policy to meet the minimum requirements under state Insurance law, N.Y. Ins. Law §§ 3103, 3420; Bersani, supra, 36 N.Y.2d at 46, 369 N.Y.S.2d at 111; see Helfaer v. John Hancock Mut. Life Ins. Co., 51 Misc.2d 869, 874, 274 N.Y.S.2d 494, 500-01 (Sup. Ct. Niagara County 1968), rev'd, 30 A.D.2d 102, 290 N.Y.S.2d 40 (4th Dep't 1968), reinstated, 26 N.Y.2d 699, 308 N.Y.S.2d 865 (1970).

### b.  Arbitration

Conforming Defendant's SUM policy to New York regulations, see Bersani, supra, 36 N.Y.2d at 460, 369 N.Y.S.2d at 111, the state's optional arbitration provision applies. This choice of forum favors the insured by affording the insured flexibility of where to resolve coverage disputes, cf. N.Y. Ins. Law § 3420(a).  Since Plaintiff has the option of arbitrating the coverage dispute pursuant to New York SUM coverage, he has fully complied and thus is not barred by § 60-2.3(f), Condition Section 14, of Defendant's policy from commencing this action.

### c.  Breach of Contract

Plaintiff concludes that Defendant breached its SUM policy by refusing to pay "the full and fair amount due to him under the policy" (Docket No. 1, Ex. B, Compl. ¶¶ 21-23). He now claims that he is "legally entitled to recover" the full $900,000 of SUM coverage (Docket No. 71, Pl. Memo. at 12), conceding that the precise amount owed is a material issue of fact (id. at 13-14).

Plaintiff has stated a breach of contract, Santoro v. GEICO, 117 A.D.3d 1026, 1027-28, 986 N.Y.S.2d 572, 573 (2d Dep't 2014); see Bi-Economy Mkt. v. Harleysville Ins. Co. of N.Y., 10 N.Y.3d 187, 191-92, 856 N.Y.S.2d 505, 507-08 (2008) (insurer offer to pay less than full loss for business loss coverage and delayed payment alleged a breach of contract).

Defendant is not entitled to judgment in its favor as a matter of law.  As discussed above, Defendant compelled arbitration clause is not applicable here to bar Plaintiff's present claim.  Defendant has not argued that Plaintiff otherwise breached the terms of the SUM policy.

16

The disputed material issue of fact is the coverage Plaintiff is entitled to for the "full and fair amount due" under the Policy.   The moving and opposing papers show the obvious valuation dispute from Plaintiff's demand of the full limit of $900,000 and Plaintiff's rejection of Defendant's settlement offer of $50,000 (or a total of $150,000 from all sources).   The parties differ on the extent of Plaintiff's TBI injuries and the valuation of his damages.   Defendant acknowledges that this a material issue but concluded it should be arbitrated under its SUM policy.   This difference cannot be resolved on Defendant's Summary Judgment Motion.

          4.   Conclusion

Thus, Defendant's Motion for Summary Judgment (Docket No. 37) dismissing the First Cause of Action's breach of contract claim is denied.

      D.   Second Cause of Action:  Duty of Good Faith and Fair Dealing under New York Law

          1.   Parties' Contentions

In the Second Cause of Action, Plaintiff seeks to recover the costs, disbursements, and attorneys' fees for bringing this action, "as well as consequential damages to be determined at the time of trial" (Docket No. 1, Ex. B, Compl. ¶¶ 34, 35).

Defendant denies that it acted in bad faith or breached the duty of good faith and fair dealing.   It focused on Plaintiff lack of exposure to liability that would be under Defendant's supplemental coverage.   (Docket No. 37, Def. Memo. at 5, 13-21.) Defendant argues that Plaintiff was never exposed to liability to a third party, where the duty of good faith and fair dealing becomes applicable in the resolution of claims against an insured (id. at 13).   To establish a prima facie case of bad faith in that context,

Defendant argues that Plaintiff needed to show Defendant acted with a gross disregard of Plaintiff's interests (id. at 13, 15-16).

Furthermore, Defendant states settlement within the policy limit is not actionable under this duty (id. at 20-21). Since settlement within the SUM limit is possible, Defendant concludes Plaintiff has not alleged a breach of the duty of good faith (id. at 19-21).

Plaintiff argues that Defendant breached its duty of fair dealing by failing to agree to pay him the full amount of the SUM coverage for his injuries (Docket No. 71, Pl. Memo. at 14-16). In addition to the amount of SUM limit, Plaintiff is "legally entitled to recover" as compensatory damages for breach of contract, Plaintiff also seeks consequential damages because of Defendant's bad faith in failing to pay (id. at 15). He states that Defendant had a duty to investigate and adjust the claim fairly (see Docket No. 71, Pl. Memo. at 16; Docket No. 70, Pl. Statement ¶ 60 (citing Barbara Jones' testimony that it was her duty to fairly evaluate Plaintiff's claim, Docket No. 72, Pl. Atty. Aff. ¶ 10, Ex. B, Jones EBT Tr. at 162)).

2. Applicable Law

Implicit in an insurance policy is a covenant of good faith and fair dealing that the insurer would investigate the claim in good faith and pay covered claims, Bi-Economy Mkt., supra, 10 N.Y.3d at 194, 856 N.Y.S.2d at 509 (citation omitted) (Docket No. 71, Pl. Memo. at 14). Generally, this implied covenant "embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the covenant,'" Dalton v. Educational Testing Serv., 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 979 (1995) (quoting Kirke La Shelle Co. v. Armstrong Co., 263 N.Y. 79, 87, 188 N.E. 163, 167 (1933)) (id. at 14-15).

18

"At the root of the 'bad faith' doctrine is the fact that insurers typically exercise complete control over the settlement and defense of claims against their insureds, and, thus, under established agency principles may fairly be required to act in the insured's best interests," Pavia v. State Farm Mut. Auto. Ins. Co., 82 N.Y.2d 445, 452, 605 N.Y.S.2d 208, 211 (1993) (citation omitted).

A plaintiff may succeed on a claim for breach of implied covenant of good faith and fair dealing if he can "'establish[] a legal duty separate and apart from contractual duties,'" Schonfeld v. Wells Fargo Bank, N.A., as Trustee for Aegis Asset Back Secs. Trust Mortgage Pass-Through Certs., No. 1:15-cv-01425, 2017 WL 4326057, at *5 (N.D.N.Y. Sept. 27, 2017) (quoting Washington v. Kellwood Co., No. 05 Civ. 10034, 2009 WL 855652, at *6 (S.D.N.Y. Mar. 24, 2009)).  A claim for good faith and fair dealing based upon the breach of the terms of the agreement "is necessarily duplicative of a breach of contract claim," Washington, supra, 2009 WL 855652, at *6.

"To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must establish the following:  '(1) defendant must owe plaintiff a duty to act in good faith and conduct fair dealing; (2) defendant must breach that duty; and (3) the breach of duty must proximately cause plaintiff's damages,'" Schonfeld, supra, 2017 WL 4326057, at *5 (quoting Washington, supra, 2009 WL 855652, at *6).

New York courts, however, have not recognized breach of this duty as a distinct tort, e.g., New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 639 N.Y.S.2d 283 (1995) ("NYU").  Instead, breach of that duty is a source for consequential damages beyond the limits or terms of the insurance policy from the insurer's delay or denial of coverage, Certain Underwriters at Lloyd's v. BioEnergy Dev. Group LLC, 178 A.D.3d 463, 464, 115

N.Y.S.3d 240, 240-41 (1st Dep't 2019); Carden v. Allstate Ins. Co., 30 Misc.3d 479, 482, 912 N.Y.S.2d 867, 870 (Sup. Ct. Westchester County 2010); Acquista v. New York Life Insurance Co., 285 A.D.2d 73, 77-82, 730 N.Y.S.2d 272, 275-79 (1st Dep't 2001). Consequential damages are additional damages "caused by a carrier's injurious conduct—in this case, the insurer's failure to timely investigate, adjust and pay the claim," Bi-Economy Mkt., supra, 10 N.Y.3d at 196, 856 N.Y.S.2d at 510.  These damages are not limited to the amount specified in the policy, Acquista, supra, 285 A.D.2d at 80, 730 N.Y.S.2d at 277; Bi-Economy Mkt., supra, 10 N.Y.3d at 192-93, 856 N.Y.S.2d at 508.

An insurer owes a duty to the insured "to act in 'good faith' when deciding whether to settle . . . a claim, and  . . . may be held liable for breach of that duty," New England Ins. Co. v. Healthcare Underwrites Mut. Ins. Co., 295 F.3d 232, 241 (2d Cir. 2002) (quoting Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000)).  Plaintiff must establish a causal connection between the insurer's bad faith and the loss of an actual settlement opportunity, Pavia, supra, 82 N.Y.2d at 453, 605 N.Y.S.2d at 211.

### 3. Analysis

Plaintiff established breach of this duty from Defendant's insufficient investigation of his claims prior to making their offer (Docket No. 71, Pl. Memo. at 16; Docket No. 70, Pl. Statement ¶¶ 45, 52, 58, 60, 62, 63, 69, 70, 79-83).  Defendant made its initial offer on an incomplete medical record.  Plaintiff faults Barbara Jones for not receiving his full medical record before adjusting his claim and making Defendant's offer (Docket No. 70, Pl. Statement ¶¶ 45, 52, 62, 63).  Reviewing the chronology of the adjustment of this claim before filing this action, Plaintiff submitted medical records to Defendant in March 2017 and added further medical records and authorizations in June 2017 at Defendant's

request.  Defendant made its offer to Plaintiff in July 2017 while also seeking additional records pursuant to the authorizations.  Furthermore, Defendant said it wanted independent examinations of Plaintiff, but it still made its offer before conducting any examination.  Upon this record, Defendant evaluated Plaintiff's claim at a total $150,000 (including proceeds already received).

Plaintiff also argues that Defendant should have accepted the medical report from his treating doctor, Dr. Leddy (id. ¶¶ 69-70).  Plaintiff also questions the independence and thoroughness of Defendant's independent examiners that occurred one year after Defendant's request for these examinations (id. ¶¶ 79-83, 70).

Considering these events up to November 2017 (when Plaintiff filed suit), Defendant's investigation of Plaintiff's injuries was incomplete.  Defendant conceded this by seeking additional medical records and examinations while its offer was pending.

Plaintiff sued, however, in the middle of the adjustment process, rather than after denial of coverage as alleged in other cases, e.g., Acquista, supra, 285 A.D.2d at 78, 730 N.Y.S.2d at 275.  Defendant stated that its $50,000 offer was not final (Docket No. 37, Def. Statement ¶¶ 65, 70).  Plaintiff replies that no further offers were made despite Defendant later receiving his medical records (Docket No. 70, Pl. Statement ¶¶ 65, 70).  But Plaintiff has not shown that Defendant's offer was final.

There are material issues of fact whether James River sufficiently investigated and adjusted Plaintiff's claim without being dilatory or with the intention not to pay, cf. Acquista, supra, 285 A.D.2d at 78, 730 N.Y.S.2d at 276; see Bi-Economy Market, supra, 10 N.Y.3d at 194, 856 N.Y.S.2d at 509 (Docket No. 71, Pl. Memo. at 16).  For example, Plaintiff complains that Ms. Jones delayed requesting his medical records, taking 39 days rather

than the normal 30 days from receipt of medical authorizations (Docket No. 70, Pl. Statement ¶ 62).  While a brief delay may not be actionable, Plaintiff alleges that Ms. Jones made Defendant's offer to Plaintiff while awaiting his medical records (id. ¶ 63).

Defendant did not file a responding Statement of Facts to counter Plaintiff's opposing Statement.  Instead, Defendant initially filed its Statement that set forth that Ms. Jones received medical authorizations on June 15, 2017, and offered $50,000 to settle Plaintiff's claim on July 19, 2017 (Docket No. 37, Def. Statement ¶¶ 62, 63).  Defendant did not state when it received Plaintiff's medical records, only noting that Defendant received additional medical records (id. ¶ 66).  Defendant did not revise its offer after seeking (and then obtaining) the additional records.  There was no changed offer after the independent examinations that occurred during the pendency of this action.

Defendant James River has not denied Plaintiff's SUM claim.  This SUM claim remains open, but cf. New England Ins., supra, 295 F.3d at 238 (excess coverage case where excess insurer objected to primary insurer's failure to settle the claim) (see Docket No. 37, Def. Memo. at 5); St. Paul, supra, 42 N.Y.2d at 978, 404 N.Y.S.2d at 553.

### 4.  Conclusion

Defendant's Motion for Summary Judgment (Docket No. 37) dismissing the Second Cause of Action is denied because of the material issues of fact presented here.

### E.  Third Cause of Action for Deceptive Practices under General Business Law § 349

#### 1.  Parties' Contentions

Although the Complaint did not state the provision of the New York General Business Law Defendant allegedly violated (cf. Docket No. 1, Notice of Removal, Ex. B, Compl. ¶¶ 37-45), Defendant counters that New York General Business Law § 349 is the

apparent section.  It concludes that Plaintiff does not meet it.  (Docket No. 37, Def. Memo. at 21-24.)  Defendant argues that Plaintiff fails to allege a § 349 claim for this private insurance contract (such as the policy here) because it is not consumer-oriented despite Plaintiff's generic allegation that all Lyft drivers face similar circumstances (id. at 22-23).

Plaintiff, now citing General Business Law § 349 without reference to other provisions of the General Business Law, contends that Defendant violated General Business Law § 349 by purporting to offer SUM coverage in New York when it was not authorized to sell insurance in that state (Docket No. 71, Pl. Memo. at 16-19).  He denies that there is an insurance exception under § 349 and that his dispute has a consumer orientation (id. at 17-18).

2.  Applicable Law

General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state, N.Y. Gen. Bus. L. § 349(a); Delmonte v. Citibank, N.A., No. 04CV6396, 2005 WL 8174293, at *4 (W.D.N.Y. Oct. 28, 2005) (Siragusa, J.).

Section 349 "is directed at wrongs against the consuming public," Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 24, 623 N.Y.S.2d 529, 532 (1995).  In making this claim, Plaintiff must prove "(1) that the defendant's acts were consumer oriented; (2) that the acts or practices are deceptive or misleading in a material way; and (3) that the plaintiff has been injured as a result," Goldemberg v. Johnson & Johnson Consumer Cos., Inc., 8 F. Supp.3d 467, 478 (S.D.N.Y. 2014).  "Thus, as a threshold matter, plaintiffs claiming the benefit of section 349—whether individuals or [other entities]—must charge conduct of the

defendant that is consumer-oriented," <u>Oswego Laborers'</u>, <u>supra</u>, 85 N.Y.2d at 25, 623 N.Y.S.2d at 532.  Private contract disputes, however, do not fall within the ambit of this statute, <u>id.</u>, 85 N.Y.2d at 24-25, 623 N.Y.S.2d at 532 (contract disputes not consumer transactions).

              3.  Analysis

Contrary to Plaintiff's assertion (Docket No. 71, Pl. Memo. at 17-18), the insurance contract dispute here is not consumer-oriented to invoke New York General Business Law § 349, <u>Oswego Laborers'</u>, <u>supra</u>, 85 N.Y.2d at 25, 623 N.Y.S.2d at 532.  Plaintiff has not alleged Defendant's settlement policies affected similarly situated consumers or insureds.  He now only generally claims that <u>Lyft's</u> insurance scheme (not alleged in this Complaint) "implicate[d]" other New York Lyft drivers (Docket No. 71, Pl. Memo. at 17-18), where that scheme did not include Defendant James River's settlement and adjustment procedures.  Defendant James River merely was the insurer Lyft contracted with to offer that coverage.  Assuming this is actionable here, there is no evidence that Lyft's purported scheme included James River's adjustment and settlement practices for other New York Lyft drivers.

The sole issue then is whether Defendant James River's adjustment and settlement practices (and not Lyft's scheme policies) affected the public interest to be considered consumer-oriented, <u>cf. Excellus Health Plan, Inc. v. Tran</u>, 287 F. Supp.2d 167, 179-80 (W.D.N.Y. 2003) (Curtin, J.).  Defendant's practices in adjusting this claim do not affect the public interest.  Plaintiff does not offer proof of other New York Lyft drivers being similarly treated.

This case is a quintessential private contract dispute, see NYU, supra, 87 N.Y.2d at 321, 639 N.Y.S.2d at 290 (selling of insurance policy and handling of plaintiff's claim does not constitute consumer-oriented conduct), between an insured (Plaintiff) and his insurer (James River) over coverage without any broader implications for the public. Plaintiff thus fails to provide evidence of consumer-oriented actions by Defendant.

Since there is no proof of the first element for General Business Law § 349, this Court need not address the remaining elements for a § 349 claim—that Defendant's actions were deceptive or misleading and that Plaintiff has been injured as a result.

### 4.  Conclusion

Defendant's Motion for Summary Judgment (Docket No. 37) dismissing the Third Cause of Action under the New York General Business Law is granted.

## IV.    Conclusion

Plaintiff is correct that New York State's SUM regulations apply to Defendant's out of state SUM policy, conforming it to the minimal coverage terms required by New York regulations.  Under applicable New York regulation for SUM coverage, Plaintiff is not required to arbitrate his coverage dispute.  He otherwise alleges a breach of contract claim, leaving the factual question of the appropriate level of coverage under Defendant's conformed SUM policy.  Defendant's Motion for Summary Judgment (Docket No. 37) seeking dismissal of Plaintiff's First Cause of Action for breach of contract is denied.

Similarly, as for Plaintiff's Second Cause of Action under the duty of good faith and fair dealing, issues of material fact exist as to whether Defendant delayed in the investigation and adjustment of Plaintiff's claim that preclude summary judgment.

Defendant's Motion for Summary Judgment (id.) seeking dismissal of Plaintiff's Second Cause of Action for breach of contract also is denied.

Plaintiff has not established that his insurance dispute is consumer-oriented to state a claim under New York General Business Law § 349; Defendant's Summary Judgment Motion (id.) to dismiss his Third Cause of Action is granted.

With claims remaining, this case continues to be referred to Mediator Michael Menard for further mediation (cf. Docket No. 49, mediation certificate, Jan. 23, 2020) with a session to be held on or before May 3, 2022, or ninety (90) days from entry of this Decision and Order.  A further status conference before this Court will be held after this mediation session, on May 11, 2022 (unless this case is otherwise resolved before that date), to discuss the possibility for settlement, preparations for trial, and set a trial date.

## V.    Orders

IT HEREBY IS ORDERED, that Defendant James River Insurance Company's Motion for Summary Judgment (Docket No. 37) is GRANTED IN PART (dismissing the Third Cause of Action), and DENIED IN PART (upholding the First and Second Causes of Action).

FURTHER, that the parties shall re-engage with Mediator Michael Menard, schedule, and participate in a further mediation session on or before May 3, 2022.

FURTHER, that within 10 days of the mediation session and any subsequent sessions, the mediator shall file a Mediation Certification setting forth the progress of mediation.

FURTHER, that this mediation process shall be completed by May 3, 2022.

FURTHER, that the parties shall appear before this Court on Wednesday, May 11, 2022, at 2:30 pm, by Zoom for a status conference.

SO ORDERED.


Dated:        February 2, 2022
              Buffalo, New York




                                              s/William M. Skretny
                                             WILLIAM M. SKRETNY
                                          United States District Judge


Appendix:  Applicable SUM Provisions

**Appendix:  Applicable SUM Provisions**

<u>New York State Regulations</u>

New York SUM regulations required endorsement of auto liability policies that stated

> "We will pay all sums that the insured or the insured's legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured, caused by an accident arising out of such uninsured motor vehicle's ownership, maintenance or use, subject to the Exclusions, Conditions, Limits and other provisions set forth in this SUM endorsement."

11 N.Y.C.R.R. § 60-2.3(f) Section II (2021).

New York insurance regulations also afford arbitration when the insured and insurer do not agree as to the amount of payment.  Currently, it provides

> If any insured makes claim under this SUM coverage and we do not agree that such insured is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured, or we do not agree as to the amount of payment

<u>Defendant's SUM Policy</u>

Defendant James River Insurance's SUM policy has a similar declaration:

> "We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle'.  The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident'.  The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the 'uninsured motor vehicle'."

(Docket No. 37, Def. Atty. Aff. Ex. F at 30, Uninsured Motorists Coverage—Bodily Injury Schedule A.1.).

Defendant's SUM policy has an arbitration and a similar legal action provisions.  The policy states that

> "If we and an 'insured' disagree whether the 'insured' is legally entitled to recover damages from the owner or driver of an 'uninsured motor vehicle' or do not agree as to the amount of damages that are recoverable by that 'insured', the disagreement will be settled by arbitration.  Such arbitration may be initiated

that may be owing under this SUM coverage, then, <u>at the option and upon written demand of such insured</u>, the matter or matters upon which such insured and we do not agree shall be settled by arbitration, administered by the

_____

(insert name of designated organization), pursuant to procedures approved by the Superintendent of Financial Services for this purpose.

11 N.Y.C.R.R. § 60-2.3(f), Conditions Sec. 11(a) (2021) (emphasis added) (<u>see</u> Docket No. 71, Pl. Memo. at 7).

The version of the regulation at the time of Plaintiff's accident specified the American Arbitration Association as the arbitral body (<u>see</u> Docket No. 72, Pl. Atty. Aff. Ex. L, 11 N.Y.C.R.R. § 60-2.3, Conditions Sec. 12(a) (2014); <u>see also</u> <u>id.</u>, Ex. O, email Barbara Jones of James River Insurance to John Loss, July 18, 2017, stating that Defendant used American Arbitration Association for arbitrations).

These regulations also provide for an action against the insurer

"No lawsuit shall lie against us unless the insured or the insured's legal representative has first fully complied with all the terms of the SUM coverage,"

11 N.Y.C.R.R. § 60-2.3(f), Conditions Sec. 14.

by a written demand for arbitration made by either party. The arbitration shall be conducted by a single neutral arbitrator. However, disputes concerning coverage under this endorsement may not be arbitrated. Each party will bear the expenses of the arbitrator equally."

(Docket No. 37, Def. Atty. Aff. Ex. F, at 33, Uninsured Motorists Coverage—Bodily Injury Sec. 5.a.; Docket No. 37, Def. Memo. at 8).

Defendant's SUM policy also excludes legal actions against Defendant

"No legal action may be brought against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form and with respect to Paragraphs **a., c.** and **d.** of the definition of 'uninsured motor vehicle' unless within two years from the date of the 'accident':

"**a.** Agreement as to the amount due under this insurance has been concluded;

"**b.** The 'insured' has formally instituted arbitration proceedings against us. In the event that the 'insured' decides to arbitrate, the 'insured' must formally begin arbitration proceedings by notifying us in writing, sent by certified mail, return receipt requested; or

"**c.** 'Suit' for 'bodily injury'' has been filed against the uninsured motorist in a court of competent jurisdiction. Written notice of the 'suit' must be given to us within a reasonable time after the 'insured' knew, or should have known, that the other motorist is uninsured. In no event will such notice be required before two years from the date of the accident. Failure of the 'insured' or his or her representative to give us such notice of the 'suit'' will relieve us of our obligations under this Coverage Form only if the failure *to* give notice prejudices our rights."

(Docket No. 37, Def. Atty. Aff. Ex. F, at 32, Uninsured Motorists Coverage—Bodily Injury Sec. 2.; Docket No. 37, Def. Memo. at 9).